UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| In re:<br><br>JESUS JOSE PALMERONI a/k/a JOSEPH PALMERONI, d/b/a JJP CONSULTING, LLC,<br><br>    Debtor<br><br>N.V.E., INC.,<br><br>    Plaintiff<br><br>v.<br><br>JESUS JOSE PALMERONI,<br><br>    Defendant. | Civil Action No. 5:16-BK-3073-JJT<br><br>**ADVERSARY COMPLAINT** |

N.V.E., Inc. ("NVE" or the "Company"), by and through its attorneys, Pashman Stein Walder Hayden, P.C., avers as follows:

**INTRODUCTION**

1. The United States Bankruptcy Court for the Middle District of Pennsylvania has jurisdiction of this action pursuant to 28 U.S.C. § 157 because this matter arises out of the bankruptcy petition that Debtor Jesus Jose Palmeroni ("Debtor") filed in this Court.

2. NVE's dischargeability complaint is a core proceeding under 28 U.S.C. § 157(b)(2)(I).

3. Venue is proper in this district because Debtor resides in this jurisdiction and filed for bankruptcy in this jurisdiction.

## THE FRAUD LITIGATION

4. NVE has been pursuing Debtor for almost 11 years in a federal lawsuit pending in the U.S. District Court for the District of New Jersey captioned *NVE, Inc. v. Jesus Palmeroni, et al*. Civil Action Number 06-5444 (the "Fraud Lawsuit").

5. NVE initiated the Fraud Lawsuit on November 15, 2006 by filing a 13-count complaint against a number of defendants including Debtor asserting, *inter alia*, claims for fraud, breach of the duty of loyalty and tortious interference.

6. On May 18, 2011, NVE filed a First Amended Complaint ("FAC"). (A true and correct copy of which is attached hereto as Exhibit A).

7. A trial date in the Fraud Lawsuit has been set for September 11, 2017.

8. That trial will determine, among other things, whether Debtor is liable to NVE for fraud, breach of the duty of loyalty, and tortious interference.

9. NVE does not submit to the entry of orders or final judgment on those issues by this Court.

## STATEMENT OF FACTS

10. NVE is a New Jersey corporation and the manufacturer of nutritional supplements and energy products.

11. Debtor was NVE's sales manager and Vice President of Sales from 1999 until he was fired on January 3, 2006.

12. Debtor was the lynchpin of two conspiracies among NVE's former employees and outside brokers and distributors to steal money, products, and opportunities from NVE.

13. As a Vice President of NVE, Debtor owed the Company certain fiduciary duties, including the duty of loyalty.

14. Debtor breached his fiduciary duties to the Company.

15. Debtor's job required him to service existing wholesale customers for NVE's products and find new ones, for which he was paid a salary and a discretionary bonus.

16. Beginning in 1999 and continuing through at least October 2009, Debtor orchestrated two separate and distinct schemes designed to steal money, products and opportunities from NVE. (FAC ¶ 1).

17. The total loss has been estimated to exceed $10 million.

The Kickback Scheme

18. NVE's wholesale customers fall into two broad categories: brokers and distributers.

19. Brokers are companies that have relationships with retail outlets such as convenience stores. They are paid a percentage of the proceeds (typically 2.5% to 5%) from orders placed by their retail clients.

20. Distributors are retailers that buy products for resale directly from NVE or through brokers.

21. Beginning in 2000, Debtor used his position as Vice President of Sales to strong-arm brokers into paying a portion of the commissions they received from NVE back to him (hereinafter, referred to as the "Kickback Scheme"). (FAC ¶ 40).

22. Debtor falsely represented to the brokers that he controlled the accounts and had authority to: (1) determine which brokers got which accounts; (2) make agreements with brokers; and (3) quote prices.

23. Because the brokers relied to a significant extent on the NVE commissions for the survival of their respective businesses, Debtor was able to exploit their vulnerability to his benefit and to the brokers' detriment.

24. Bank records obtained by NVE in discovery reveal that Debtor secured kickbacks of at least $1.2 million.

25. The brokers were aware that these payments were unlawful and that Debtor was committing fraud and violating his duty of loyalty to NVE as its agent and employee by taking the payments. (See FAC ¶¶ 37-52).

The Distribution Scheme

26. For business reasons that are not relevant here, the wholesale price that NVE charges its international distributors is often lower than the domestic wholesale price.

27. Beginning in 2001, Debtor and a co-defendant in the Fraud Lawsuit, Vincent Rosarbo, developed a scheme whereby they would buy NVE products at the reduced international price and then sell those products to various domestic distributors, often prior customers of NVE at a price lower than charged by NVE (hereinafter, the "Distribution Scheme"). (See FAC ¶ 53).

28. Debtor and Rosarbo set up a company called Smart World, Inc. for the purpose of buying the products from NVE.

29. Debtor and Rosarbo chose that name because it was similar to the name of one of NVE's international distributors called Smart World, B.V. (See FAC ¶¶53-70).

30. Debtor and Rosarbo would place orders with NVE in the name of Smart World, B.V. for delivery in Europe.

31. Then, before the products could be shipped overseas, Debtor and Rosarbo would take possession of the goods through Smart World, Inc. and divert them to a warehouse in New Jersey.

32. Finally, using various entities under their control—Smart World, Inc., NRCG, American Wholesale Distribution, Inc. ("AWD"), and VAR Consulting ("VAR")—Debtor and Rosarbo would sell the diverted products to the Distribution Defendants in the United States. (See FAC¶¶53-70).

33. NVE customers paid millions of dollars to these entities over several years, resulting in millions of dollars in fraudulently obtained profits to Debtor and Rosarbo at NVE's expense. (See FAC¶¶53-70).

## DEBTOR'S PETITION FOR BANKRUPTCY

34. Debtor filed this bankruptcy petition in bad faith in an attempt to improperly and discreetly obtain a discharge of NVE's claims in the Fraud Lawsuit.

35. Incredibly, and despite the 11-year pendency of the Fraud Lawsuit, the Debtor did not provide NVE with notice of the Meeting of Creditors.

36. Although the Debtor lists NVE as a creditor on his Schedule E/F submitted with the proposed Plan, the Debtor also failed to provide NVE with notice of the filing of its proposed Chapter 13 Plan, the deadline to object to the proposed Plan, or the Hearing to confirm the proposed Chapter 13 Plan.

37. Apparently, by failing to provide notice to NVE, the Debtor hoped to avoid NVE having notice and an opportunity to object to the plan or to object to the discharge of its claim in the Fraud Lawsuit.

38. The debtor's proposed Second Amended Chapter 13 Plan sets forth a zero value for NVE's Fraud Lawsuit.

39. On July 24, 2017, this Court issued an order granting NVE's Motion for Leave to Amend its Objection to Debtor's Chapter 13 Plan and giving the Company 21 days to file an adversary complaint.

## NVE'S CLAIMS ARE NON-DISCHARGEABLE

40. Pursuant to 11 U.S.C. §1328(c)(2) and §523(a) NVE's claims in the Fraud Lawsuit, and its proof of claim, are non-dischargeable.

41. More specifically, Section 523 (a) (2) (A) provides an exception to discharge for debts for money or property "to the extent obtained by -- false pretenses, a false representation, or actual fraud." 11 U.S.C. § 523 (a)(2)(A).

42. In addition, Section 523(a)(4), provides an exception to discharge "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." 11 U.S.C. §523(a)(4).

43. Finally Section 523 (a)(6) provides an exception to discharge for debts "for willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6).

## COUNT I
(Determination of Dischargeability)
11 U.S.C. §523(a)

44. NVE incorporates the above allegations by reference as if set forth fully herein.

45. Based on the facts and law set forth above, this Court should determine that Debtor's debts to NVE are excepted from discharge under 11 U.S.C. § 523(a).

WHEREFORE, NVE requests:

A. An order determining Debtor's debts to NVE as alleged above are excepted from discharge pursuant to 11 U.S.C. §523(a).

B. For other equitable relief this Court may determine is fair and just.

**PASHMAN STEIN WALDER HAYDEN**
A Professional Corporation
*Attorneys for Creditor N.V.E., Inc.*
/s/ Samuel J. Samaro
SAMUEL J. SAMARO
Court Plaza South
21 Main Street - Suite 200
Hackensack, New Jersey 07601
Telephone:  201-488-8200
Facsimile:  201-488-5556
ssamaro@pashmanstein.com